IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ELIZABETH BLOOM,** | CV 04-6217-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **JO ANNE B. BARNHART,**<br>**Commissioner of**<br>**Social Security,** | |
| Defendant. | |

**KATHRYN TASSINARI**
**ROBERT BARON**
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

    Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1028

1 - OPINION AND ORDER

**VIKASH CHHAGAN**
Acting Regional Chief Counsel, Seattle, Region X
**DAVID J. BURDETT**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2522

    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Elizabeth Bloom seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB).

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **AFFIRMS** the Commissioner's final decision.

## ADMINISTRATIVE HISTORY

Bloom was last insured for DIB on December 31, 2001.  Bloom filed her application for DIB on October 1, 2001.  The application was denied initially and on reconsideration.  A hearing was held on October 8, 2003.  At the hearing, Bloom was represented by an attorney.  Bloom, her husband, and a vocational expert (VE) testified at the hearing.

On November 25, 2003, an Administrative Law Judge (ALJ)

issued a decision denying Bloom's application.  That decision became the final decision of the Commissioner on May 19, 2004, when the Appeals Council denied Bloom's request for review.

## BACKGROUND

### I.   Plaintiff's Testimony

Bloom was born on March 12, 1960, and was 43 years old at the time of the hearing.  Tr. 14, 55.  Bloom completed high school and two years of college.  Tr. 416.  Bloom is married and has a daughter who was born on October 11, 1996.  Tr. 418. Bloom's past relevant work includes employment as a sales clerk/cashier, payroll clerk, and grocery store assistant manager.  Tr. 416-17.

On her application for benefits, Bloom listed systemic lupus erythematosus, asthma, Raynaud's Syndrome, daily migraines, arthritis, muscle cramps, and severe skin lesions as disabling conditions.  Tr. 66.

At the hearing, Bloom testified she stopped working in 1996 because "[i]t was too difficult with my problems that I was having medically and physically and trying to take care of my daughter.  My husband was working full-time and going to school full-time.  And between the two of us, it was hard to juggle." Tr. 417.  On her application for benefits, however, Bloom states she left her last job before her daughter was born because "it

3 - OPINION AND ORDER

became evident that it was going to be a difficult pregnancy." Tr. 75. Bloom stated in her application and testified at the hearing that at the time of her daughter's birth, she intended to return to work when her daughter reached school age. Tr. 75, 419. At the hearing, however, Bloom testified she left her last two jobs because she was diagnosed with lupus "and also possible breast cancer" and was not functioning very well emotionally. Tr. 418.

Although Bloom testified at the hearing regarding her physical and mental condition, her testimony is confusing and vague as to when she experienced particular symptoms.[1] Bloom testified "back then" she was having migraine headaches three-to-five times each month with each headache lasting anywhere from two-to-five days. Tr. 420. The headaches caused vomiting, nausea, diarrhea, sensitivity to light and noise, and excruciating pain. Tr. 421. Bloom also testified she experienced diarrhea three-to-four times daily "back then."

Bloom testified she "would be in bed most of the time" and would have her daughter "sit in front of the TV or a video or whatever and that was basically our – how we operated." Tr. 421. Bloom admitted she traveled to Disneyland with her family in

---

[1] This is primarily due to the tendency of both the ALJ and Bloom's attorney to ask vague questions without clearly defining the periods in question and to refer to records without adequately describing them.

February 2002, but testified she stayed in a motel quite a bit while her husband and daughter went out. Tr. 427.

Bloom testified her daily routine in 2001 was to get her daughter up and "put on a video or a movie for her and put snacks and juice in front of her and I'd lay in bed." Tr. 428. For three or four years beginning in 1998, Bloom would walk her daughter to preschool three or four blocks from their home. Tr. 429. If the weather was very bad, Bloom would drive to the preschool. Tr. 429. Bloom stated on her good days she would dress her daughter and herself, get her daughter ready for preschool, take her to preschool, come home, and "try to clean the house." She would do the housework in stages and take rest breaks. On her good days, she could work at something for an hour to an hour and a half before she needed to take a break. Tr. 429. Bloom testified she had only one or two good days each week. Tr. 430. On bad days, she would just lay in bed.

Bloom testified she saw a mental-health counselor in 1998 when she first moved to Oregon but she did not remember his name. Tr. 430. Bloom reported she tried to do some sewing, gardening, and cooking, but she was unable to do these activities for any length of time due to fatigue or because she would have to run to the bathroom. Tr. 432-33.

Bloom testified she currently tries to walk 30-45 minutes each day. Tr. 435. She is unable to walk at least 12 days out

of each month because she doesn't feel able to do so.  Tr. 435.
Bloom could not recall whether she could walk more or less than
this amount in the two years before the hearing.

**II.  Medical Evidence**

Except when noted below, Bloom does not challenge the ALJ's summary of the medical evidence.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 16-18.

### **STANDARDS**

The initial burden of proof rests on the claimant to establish she was disabled prior to her last insured date.  42 U.S.C. § 423(c).  *See also Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20

C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

## II. The ALJ's Decision

At Step One, the ALJ found Bloom had not engaged in substantial gainful activity since the onset of her alleged disability. Tr. 15.

At Step Two, the ALJ found Bloom has the following impairments that are considered severe under the regulations: lupus, asthma, and headaches. Tr. 16.

At Step Three, the ALJ found Bloom's impairments do not meet or medically equal any of the presumptively disabling conditions in the Listing of Impairments in Appendix 1, subpart P, Regulation No. 4. Tr. 16.

The ALJ determined Bloom retained the RFC to perform a modified range of light exertional work with the following physical limitations: She should avoid dust and fumes, have access to a bathroom, and have the option to change positions at

9 - OPINION AND ORDER

will.  Tr. 19.  The ALJ also apparently concluded Bloom should not lift or carry more than ten pounds frequently with a maximum of 20 pounds occasionally.  Tr. 455.

At Step Four, the ALJ found Bloom retained the RFC to return to her prior work as a payroll clerk.  Tr. 19.  The ALJ relied on testimony from the VE, who opined a person of Bloom's age, education, and RFC could perform the job of payroll clerk.  Tr. 20.

Accordingly, the ALJ concluded Bloom was not disabled at any time through the date she was last insured and, therefore, the ALJ did not reach Step Five of the sequential analysis.  Tr. 19.

### DISCUSSION

Bloom contends the ALJ erred when he failed to have a medical examiner testify at the hearing and improperly rejected the testimony of Bloom and her husband, Norman Bloom.

**I.  The ALJ Was Not Required to Call a Medical Advisor.**

To obtain disability benefits, Bloom must demonstrate she was disabled before her last insured date.  *See* 42 U.S.C. § 423(c).  *See also* 20 C.F.R. § 404.1520.  Bloom's last insured date was December 31, 2001.  Bloom has the burden of proof on this issue.  *See Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991).  Bloom argues the record establishes she was unable to work on a sustained basis before her last insured date and the

ALJ erred when he failed to call a medical expert to assist him in determining the onset date of Bloom's disability.

When the record is ambiguous as to the onset date of the claimant's disability and medical inferences need to be made, the ALJ must call a medical expert to assist in determining the onset date. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) (citing SSR 83-20 (1983)).

Here there is no medical record of a disabling condition at any time between Bloom's alleged onset date and the date she was last insured. The ALJ concluded:

> During the period under adjudication, the alleged onset date through the date last insured, the claimant's condition of lupus was predominately inactive. Flares were infrequent and mild. Even combined with all then existing severe and nonsevere medical conditions at their worst there was no 12 month period in which the claimant was limited to less than a light exertional capacity.

Tr. 17. The Court finds the record is not ambiguous as to Bloom's onset date because there is not any evidence to support an onset date before Plaintiff's date last insured. The ALJ, therefore, was not required to call a medical expert to assist in determining Bloom's onset date.

Bloom argues the opinions of Patricia O'Hare, M.D.; N. Paul Hudson, M.D.; and Peter Moulton, Ph.D., support her disability claim. On November 22, 2002, Dr. O'Hare opined Bloom was unable to work due to "multiple medical problems," including "chronic

11 - OPINION AND ORDER

skin problems from the lupus as well as open lesions on her feet." Dr. O'Hare concluded Bloom would be unable to work at even a sedentary job eight for hours a day, five days a week. Tr. 317.

On December 6, 2002, Dr. Hudson opined, "At this time, [Bloom] is not really capable of working at a full-time job on a dependable basis." Tr. 283. On September 19, 2003, Dr. Moulton evaluated Bloom. Tr. 391-408. Dr. Moulton concluded Bloom's "memory problems would present serious difficulties were she to be in a work setting at the present time." Tr. 401. Bloom also asserts she reported problems with concentration, fatigue, sleeping difficulties, and depression to various physicians before December 31, 2001.

Social Security Ruling 83-20 provides in pertinent part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

Here it was not necessary for the ALJ to call on the services of a medical advisor because the ALJ did not need to infer an onset date. The ALJ concluded, based on the evidence in the record,

12 - OPINION AND ORDER

that Bloom did not have a disabling impairment at any time before her last insured date.

The Court finds the ALJ's conclusion is supported by substantial evidence in the record. Bloom had routine medical examinations in 1999, 2000, and 2001. Her physicians did not report any medical or psychological conditions of a disabling severity that continued for a period of 12 months or longer at any time before the end of 2001. In fact, her doctors repeatedly reported Bloom was generally well; her lupus was inactive; and her judgment, insight, and memory were intact.

Accordingly, the Court finds the ALJ's conclusion that Bloom was not disabled before December 31, 2001, is supported by substantial evidence in the record.

## II. The ALJ Did Not Err When He Rejected Bloom's Testimony Regarding the Severity of Her Limitations.

Bloom argues the ALJ erred when he failed to provide clear and convincing reasons for rejecting Bloom's testimony concerning her limitations caused by migraines, diarrhea, and fatigue.

The ALJ concluded Bloom was not fully credible regarding her limitations because her testimony is not consistent with evidence in the record that she engages in various activities such as gardening and Japanese folk dancing. In addition, the ALJ noted Bloom has acted as the primary caregiver for her daughter since October 1996. Although her husband assisted, he was working full-time. Bloom was the unassisted care provider for most of

13 - OPINION AND ORDER

the day.

When weighing a claimant's credibility, the ALJ may consider "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). *See also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005)(ALJ may discredit a claimant's subjective complaints by identifying inconsistencies between his complaints and his daily activities). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ found Bloom's testimony was not entirely credible, and the ALJ accurately described inconsistencies between Bloom's testimony and the medical record. The ALJ explained Bloom's testimony of total incapacity during the relevant time was inconsistent with Bloom's reports of participation in hobbies and activities including gardening and folk dancing. The ALJ also noted Bloom has been the primary caregiver for her young daughter since her birth in October 1996.

The Court finds the ALJ adequately explained his reasons for finding Bloom's testimony concerning her incapacity not credible.

The Court, therefore, concludes the ALJ did not err when he rejected Bloom's testimony as to the severity of her limitations.

### III. The ALJ Did Not Err When He Evaluated the Testimony of Norman Bloom

Bloom also argues the ALJ erred when he "improperly failed to credit the testimony of Mr. Bloom."  The ALJ, however, did not fail to credit Norman Bloom's testimony.  The ALJ concluded, "While Mr. Bloom supported his wife's testimony he did not present any testimony showing greater limitation than is described by the residual functional capacity assessment." Tr. 17.  Bloom argues the ALJ should have drawn a different conclusion from her husband's testimony.  The Court, however, finds the ALJ's interpretation of Mr. Bloom's testimony is not unreasonable, and, therefore, should not be disturbed.

Accordingly, the Court concludes the ALJ did not err in his evaluation of Norman Bloom's testimony.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 26th day of August, 2005.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge